UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARISA BELLE ADAM, | ) | |
| | ) | No. 15-cv-4043 |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| OBAMA FOR AMERICA, AND DEMOCRATIC NATIONAL COMMITTEE AKA DNC SERVICES CORPORATION, | ) ) ) | |
| | ) | |
| DEFENDANTS. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se Plaintiff Marisa Belle Adam brings this civil rights action against Obama for America ("OFA") and the Democratic National Committee ("DNC"), alleging race discrimination and retaliation. OFA has not been served.[1] The DNC moves for dismissal of this action with prejudice, or alternatively for summary judgment [21]. For the reasons stated below, the DNC's motion to dismiss is granted.

**Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

---

[1] Upon inquiry from the Court, counsel for the Democratic National Committee represented at the October 15, 2015 status hearing that the entity Obama For America still exits. The Court directed counsel to send Plaintiff a letter containing an address where Obama for America can properly be served. The Court presumes that counsel complied with its instruction. Therefore, on the Court's Motion to extend the time limit for service, *see* Fed. R. Civ. P. 4(m), Plaintiff shall have 30 days from the date of this Order to effect service on Obama For America. Failure to do so will result in dismissal of this case.

1

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

In deciding a Rule 12(b)(6) motion, courts "may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to [her] claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). This ensures that plaintiffs will not "evad[e] dismissal under Rule 12(b)(6) simply by failing to attach to [the] complaint a document that proves [her] claim has no merit." *Id.* For the same reason, courts may also consider judicially noticed documents, historical documents, documents contained in the

2

public record, and reports of administrative bodies. *See Peraica v. Vill. of McCook,* --- F. Supp. 3d --- 2015 WL 5090484, at *1, (N.D. Ill. Aug. 28, 2015) (citing *Menominee Indian Tribe of Wis. v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998) and *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527, n. 4 (7th Cir. 2000)).

**Background**

In her second amended complaint, Adam alleges that in the fall of 2011, she interned for OFA, President Obama's reelection campaign. R. 17 ¶ 1. Adam undertook the internship in the hope of obtaining a more permanent, paid position with the campaign. *Id.* ¶ 12. Adam does not allege that she ever worked, applied to work, interned, or volunteered for the DNC. *Id.*

Adam began her internship with OFA in the Political Department, along with four other interns. *Id.* ¶ 1. Two more interns joined the department the following month. *Id.* ¶ 2. All six of the other interns in the Political Department were white, *id.* ¶¶ 1-2; Adam is black, *id.* ¶ 1. Early in her internship, Adam began to feel uncomfortable. *Id.* She complained to Intern Coordinator Kate Cummings, an OFA employee, about the lack of racial diversity among the interns in her group. *Id.* Adam also reported to Cummings that she was being excluded from meetings and treated rudely on account of her race. *Id.*

Cummings discussed Adam's concerns with her supervisor, Political Director of Operations (and OFA employee), Abigail Witt. *Id.* Adam alleges that Cummings and Witt, who are both white, began to act in a threatening and retaliatory manner toward her, and that this behavior escalated over time. *Id.* ¶¶ 2, 4-6, 8. Adam

3

requested several times to be transferred from the Political Department to another department. *Id.* ¶¶ 1, 6-8.

After a series of confrontational encounters with Witt, *id.* ¶¶ 5-8, Adam took her concerns to the OFA Human Resources Department, *id.* ¶¶ 9-11. To Adam's apparent surprise, the Director of Human Resources informed her that she would no longer be considered an intern in the Political Department, but a volunteer. *Id.* ¶ 11. Adam considered this an adverse action against her, and believed it was taken in retaliation for her complaints regarding the lack of racial diversity among interns. *Id.* Adam was also instructed not to pursue internship positions in any other department at OFA and was informed that she would not be considered for any paid positions with the campaign. *Id.* Adam alleges that all six of the white interns she worked with were hired or given job offers. *Id.* ¶ 12.

Adam sues for damages under 42 U.S.C. § 1981, citing irreparable psychological and professional damage. *Id.* at 3. She claims that her experience at OFA caused her profound anxiety and depression, which impacted her health, her future employment and employability, and her personal life. *Id.* at 4. She pleads, "I have been made unequal." *Id.*

## Discussion

The DNC moves to dismiss Adam's second amended complaint with prejudice on the basis that the DNC is not a proper party to this suit and Adam has failed to state a plausible claim under 42 U.S.C. § 1981. Because the Court agrees that the

4

DNC is not the proper defendant, it does not reach the DNC's argument on the merits.

The DNC was created during the Democratic National Convention of 1848. *See* The Democratic National Committee, *available at* http://www.democrats.org/organization/the-democratic-national-committee (last visited Dec. 7, 2015). It is responsible for governing the Democratic Party, planning the presidential nominating convention, promoting the Democratic political platform, supporting candidates throughout the country for local, state and national office, and working with various constituencies to respond to the needs and views of Democrats across the nation. *Id.*

Adam does not set forth a single factual allegation against the DNC. She does not allege that she worked for, applied to, interned or volunteered at the DNC. She does not allege that anyone from the DNC discriminated or retaliated against her or that anyone from the DNC knew about, much less condoned or turned a blind eye to the alleged discrimination and retaliation she experienced at OFA. Indeed, the only place the DNC is mentioned in Adam's second amended complaint is the caption. R. 17. Accordingly, Adam does not state a claim for direct liability against the DNC.

In her response to the DNC's motion to dismiss, however, Adam argues (despite the absence of any pertinent allegations in her second amended complaint) that the DNC and OFA have a principal-agent relationship, making the DNC vicariously liable for the alleged misconduct of OFA. R. 27 at 1-2. It is true that a principal may be held vicariously liable for the discriminatory conduct of its agent.

*See Hill v. Shell Oil Co.,* 78 F. Supp. 2d 764, 778 (N.D. Ill. 1999) (denying Shell Oil Company's motion to dismiss § 1981 claims based on its contract dealer stations' alleged misconduct). "What constitutes an agency relationship is a matter of hornbook law: 'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Id.* (quoting the Restatement (Second) of Agency § 1). Whether an agency relationship exists is a question of fact. *Id.* (citing *Moriarty v. Glueckert Funeral Home, Ltd.,* 155 F.3d 859, 864 (7th Cir.1998)). To survive a motion to dismiss on a theory of vicarious § 1981 liability, "a plaintiff must allege that the defendant had an agency relationship with the alleged violator." *See Odeluga v. PCC Community Wellness Center*, No. 12-cv-7388, 2013 WL 4552866, at *5 (N.D. Ill. Aug. 27, 2013) (dismissing § 1981 claims against defendants in the absence of any factual allegations that they acted on behalf of the alleged violator or were subject to the alleged violator's control).

Adam has not alleged (or otherwise argued) a single fact permitting the reasonable inference that in committing the alleged misconduct, OFA acted with the consent, on behalf, or subject to the control of the DNC. For example, she does not allege any corporate or contractual relationship between the DNC and OFA. Nor does she allege that any DNC employees or DNC policies directed or controlled the hiring decisions of OFA. Adam does not even contend that she believed OFA was acting on the DNC's behalf in committing the misconduct alleged. Adam does (convincingly) argue that the work of OFA benefitted the DNC. R. 27 at 6. But this,

6

on its own, is insufficient to plausibly allege an agency relationship. *See* Restatement (Third) Of Agency § 1.01, cmt. g (explaining that performance by one party that benefits another party is only the performance of an agent acting on behalf of its principal when the essential elements of agency—consent and control—are present).

To be sure, the DNC and OFA shared a common purpose: both worked toward the re-election of Barack Obama and Joseph Biden as President and Vice President of the United States. It may also be the case that in pursuit of this goal, the organizations shared voter information, provided one another with other operational support, and collaborated on various projects. *See, e.g., Shamblin v. Obama for America*, No. , 2015 WL 1754628 at *6 (M.D. Fla. Apr. 17, 2015) (finding a genuine issue of material fact as to whether the DNC was aware of and failed to prevent robocalls made by Obama for America in Florida for the purpose of establishing vicarious TCPA liability). None of this, however, tends to establish an overarching principal-agent relationship between the DNC and OFA such that the DNC can be held vicariously liable for the allegedly discriminatory or retaliatory hiring practices of OFA. Because Adam has failed to plausibly allege the DNC's vicarious liability for the injury alleged, her claim against the DNC cannot stand.

**Conclusion**

Adam has already twice amended her complaint in this matter. As set forth above, she has neither alleged an agency relationship between the DNC and OFA nor set forth any facts in her response suggesting that such a relationship could

7

plausibly exist. The Court therefore concludes that any further amendment regarding the DNC would be futile. The DNC's motion to dismiss [21] is therefore granted and the DNC is dismissed from this case with prejudice.

On the Court's Motion to extend the time limit for service, *see* Fed. R. Civ. P. 4(m), Plaintiff shall have 30 days from the date of this Order to effect service on Obama For America. Failure to do so will result in dismissal of this case.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: December 9, 2015

8